UNITED STATES DISTRICT COURT

EASTERN DSTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MELVIN HEWITT** * | | **CIVIL ACTION** |
| **versus** * | | **NO. 2:11-cv-2051** |
| **AMERICAN POLLUTION CONTROL** * **CORPORATION** | | **SECTION "J" – Judge Barbier** |
| * | | **MAG. DIV. "5" – Mag. Chasez** |
| * * * * * * * | | |

**MEMORANDUM IN OPPOSITION TO MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Plaintiff Melvin Hewitt (hereinafter "Hewitt") respectfully opposes the present motion by defendant American Pollution Control Corporation (hereinafter "AMPOL").; on the basis that AMPOL has failed tin its duty to show both that there are no genuine issues of material facts, and that they are entitled as a matter of law.to even the partial dismissal that it seeks by way of the present motion.

This is a seaman's action brought under this court's admiralty jurisdiction. The complaint alleges that he was a seaman in defendant's employ who was assigned to work aboard various vessels as a part of the environmental cleanup following the Deepwater Horizon oil spill in the Gulf of Mexico, which is well known to this Court. He alleges that he received injuries while at work aboard vessels on both July 15, 2010 and August 2, 2010. AMPOL, while admitting that it did employ plaintiff as an "oil technician", suggests that it owed its employee no duty to provide him with a seaworthy vessel and a safe place to work because it states that it did not "own, operate, charter, or navigate" the vessels to which it assigned its employees to work. Plaintiff, for his part, suggests that AMPOL cannot be heard to assert that it owes no duty to provide its

employees with a safe place to work, including a seaworthy vessel when the job duties of those employees require them to work aboard ship as a regular part of their duties. Maritime employers such as AMPOL cannot escape responsibility for the injuries sustained by its workers on such nebulous grounds; rather, it is for AMPOL itself to seek any recovery and/or remedies it may have over against the actual owners, operators, or charterers of those vessels; as it is plainly in the best position to know to which entities it assigns its workers to perform their duties.

AMPOL devotes a great deal of energy in its memorandum supporting its motion to argue what evidence must be presented to oppose its motion, yet precious little towards its own burden in bringing such a motion. That burden is stated succinctly in section (a) of Rule 56 of the Federal Rules Of Civil Procedure, which provides (in pertinent part):

> **(a) Motion for Summary Judgment or Partial Summary Judgment**. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment *if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law*. The court should state on the record the reasons for granting or denying the motion.

FRCP Rule 56(a) (Thomson-West 2012) (emphasis added)

Hewitt asserts that AMPOL is not entitled to the relief it seeks even if the Court accepts as true each and every statement in its support of its motion. As the employer of Hewitt, it has a duty to provide its employee with a safe place to work; and makes no effort whatsoever to show that it made any attempt whatever to discharge that duty. Rather, it would take the position that it sent its employee out into the "workplace" (that being the Gulf of Mexico), and has little other responsibility for him, save to bill out his time to another entity. Hewitt submits that the law is otherwise.

The only evidence that has been submitted to the Court is that Hewitt himself does not know who the actual owner(s) of the vessels to which he was assigned during his time working on the cleanup. His deposition testimony (most of which AMPOL "fortuitously" fails to present to the Court) shows amply the confusion that reigned during the cleanup; the mass of men and materials that were deployed, the vast numbers of companies and contractors, all receiving ever-shifting orders and assignments as cleanup needs changed and evolved. What emerges from the fog is that Hewitt, along with hundreds, if not thousands, of inexperienced workers, were given rudimentary training and thrust into a rigorous, maritime work environment, daily contact with dangerous equipment and environments, while being exposed to caustic and dangerous substances.

In the context of the present case, the only evidence presented by AMPOL to support its motion for partial dismissal is its assertion that it did not own, operate, or charter either of the vessels upon which Hewitt was injured. To support its motion, it offers only Hewitt's own testimony that he did not know who the actual owners of the vessels were, but that he did not believe they were directly owned by AMPOL. Nevertheless, even if AMPOL is not the owner, operator or charterer of the vessels, it cannot absolve itself of liability for unsafe or unseaworthy conditions aboard those vessels to which it permitted its employees to be assigned.

This is a claim brought under the Jones Act. Congress enacted the Jones Act to provide a uniform federal law to determine employer liability to seamen, incorporating by reference "[l]aws of the United States regulating recovery for personal injury to, or death of, a railway employee." 46 U.S.C. § 30104. The Supreme Court has held that the Jones Act adopts "the entire judicially developed doctrine of liability" under FELA. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 456, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), *Dise v. Express Marine, Inc.,* 714 F. Supp.

558, 2010 A.M.C. 1701 (Md. 2010).  Under FELA, an employer has the *non-delegable* duty to provide its employees with a safe place to work even when those employees are required to go onto premises of a third party over which the employer has no control, *Shenker v. Baltimore & Ohio R. Co.,* 371 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963), *Nivens v. St. Louis Southwestern Railway Co.,* 425 F.2d 114 (5th Cir. 1970). This duty is identical that imposed upon the vessel owner to provide a seaworthy vessel, *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 80 S.Ct. 539, 4 L.Ed.2d 941, 1960 A.M.C. 1503 (1960), *United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541, 1959 A.M.C. 588 (1960).

Hewitt asserts that in asserting a claim for unseaworthiness, he but places AMPOL on notice, as he must under the notice pleading requirements of Rule 8, of his claim that AMPOL, as Jones Act employer, breached its duty to provide him with safe workplaces by either causing or acquiescing in his being assigned to unsafe and unseaworthy vessels which were inadequate for the purposes for which they were being utilized. The law will support a finding of unseaworthiness based on a multiplicity of conditions; and, Hewitt contends, a finding of unseaworthiness is itself, *ipso facto,* tantamount to a finding of unsafe conditions.  Thus, at least for purposes of claims brought by injured seamen, the Jones Act employer becomes the owner *pro hac vice* of the unseaworthy vessel, to the extent that there may be liability for damages sustained by the injured seaman caused in part by the unseaworthy, or unsafe condition.

Moreover, AMPOL makes no effort whatever to show that undertook any efforts whatever to inspect, supervise, or exercise any oversight over the work assignment platforms for its employees. Hewitt contends that even in the exercise of *ordinary care* in assuring itself that its employees assigned to work in premises other than its own were reasonably safe, AMPOL should have caused, at a minimum, an inspection of the vessels to which Hewitt would be

ordered to work aboard. Yet, AMPOL make no mention of any such inspection, nor does it present any evidence to this effect, preferring to rely merely upon its status as a non-owner to relieve itself of any duties towards its employee save for Jones Act. Neither does AMPOL seek any remedy over against any actual owner, operator, and/or charterer of any vessel to which its employee was assigned, despite its plainly superior ability to gain access to that information, in the event that it is found liable to Hewitt for any unseaworthy conditions attributable to the actual owner, operator, and/or charterer..

Hewitt asserts that a duty to inspect, at a minimum, is imposed upon a maritime employer such AMPOL here whose employees are assigned to work at a remote location. AMPOL's assertion that because it does not have ownership of, or exercise control over, either of the two vessels upon which Hewitt contends that he was injured that it cannot be liable for any unseaworthy conditions aboard those vessels is simply insupportable. In *Yost v. American Overseas Marine Corp.,* 798 F.Supp. 313, 1992 A.M.C. 2679 (E.D.Va 1992), a seaman's employer was found to have a duty to, *inter alia* to inspect vessel on which its employee would be assigned for hazards, and to take reasonable precautions to protect its employee from defective conditions would render the employer liable under the Jones Act. In *Davis v. Hill Engineering, Inc.,* 549 F.2d 314, 329 (5th Cir.1977), the Fifth Circuit held that the employer's failure to inspect and discover a visibly slippery deck of a vessel not owned by plaintiff's employer could constitute actionable negligence by plaintiff's employer sufficient to warrant recovery from the employer in a Jones Act action. In *Martin v. Walk, Haydel & Assoc.,* 742 F.2d 246, 249 (5th Cir.1984). the Fifth Circuit ruled that an employer owed its maritime employee a duty to provide him a safe place of work, and fact that the employer did not own the vessel upon which the injury did not relieve it of such obligation.

Hewitt submits that AMPOL has failed to show that there are no genuine issues of material fact remaining for trial, in that AMPOL has not shown that it performed any acts whatsoever to determine whether or not its employees would be assigned to unsafe workplaces, including marine vessels, when it knowingly contracted to provide workers for that very purpose.

Even if the Court accepts as true all of the statements identified by AMPOL to support its motion as true, it is not entitled to the partial dismissal it seeks. Unseaworthiness is both a factual finding as well as a term of art used in maritime law. It can be a factual finding when found to exist as a contributing factor to a maritime injury. It is a term of art because it can be equated in its Jones Act connotations with its FELA counterpart.

Just as AMPOL cannot show that there are no genuine issues of material fact, it cannot show, as indicated above, that it is entitled to summary dismissal of the unseaworthiness/unsafe workplace claims made in his complaint; for the same reasons stated above. As a matter of law, the duty owed by AMPOL towards Hewitt is non-delegable; therefore it cannot be heard to seek dismissal of his claims as a matter of that same law absent a positive showing that it exercised all due care to discharge its duties towards Hewitt.

Hewitt suggests that before this Court can consider any dismissal of any of claims against AMPOL, considerably more investigation must be undertaken, and considerably more facts must be disclosed; *at a minimum*: a) what measures, if any, AMPOL took to assure that its employees would be assigned to safe workplaces; b) what if any agreements AMPOL may have entered into with other entities by which it furnished Hewitt's services during the cleanup; c) what vessels Hewitt was assigned to work aboard; and d) whether any AMPOL personnel were involved in personnel assignments.

In conclusion, Hewitt submits that this case is simply not ripe for even the partial summary judgment being sought at this time. This Court cannot merely ritualistically rule that merely because a maritime employer (which cannot even concede its status save provisionally) surrenders over its employee to work on the premises of another, it relieves itself of all duties regarding the safety of that worker, as to unsafe working conditions on land or afloat, by whatever wordage they may be stated. AMPOL has not made an adequate showing to entitle it to the summary dismissal of the unseaworthiness claims being asserted, either as a matter of fact or as a matter of law.

**RESPECTFULLY SUBMITTED BY:**

*/s/ Ronna M. Steele*_____
**RONNA STEELE (#20006)**
301 Huey P. Long Ave.
Gretna, LA 70053
Telephone (504) 366-3475
Fax:  504-361-4752
Attorney for Melvin Hewitt

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 21st day of May, 2012, served a copy of the foregoing pleading on counsel for all parties to this litigation, upon all parties if unrepresented, and upon all known interested parties by mailing the same by United States mail, properly addressed, and first class postage prepaid, via certified mail, and/or via this Court's CM/ECF system where possible and/or practical.

*/s/ Ronna M. Steele*_____
Ronna M. Steele